UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MOHAMMED ABUHARBA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:23-cv-01761-GCS |
| | ) |
| DANIEL LAWSON, | ) |
| PATRICK McVEY, | ) |
| and | ) |
| MICHAEL MOLDENHAUER, | ) |
| | ) |
| Defendants. | ) |

### MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

#### INTRODUCTION AND BACKGROUND

Plaintiff Mohammed Abuharba, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Lawrence Correctional Center, brings this action pursuant to 42 U.S.C. § 1983 for deprivations of his constitutional rights that occurred at Menard Correctional Center. This case was severed from *Abuharba v. Pritzker, et al.*, No. 23-cv-01138-GCS on May 25, 2023. (Doc. 1). It contains the claims designated as Counts 3, 5, and 6 regarding inadequate medical care Plaintiff received after contracting COVID-19.

On January 19, 2024, the Court conducted a preliminary review of the severed claims pursuant to 28 U.S.C. § 1915A and allowed Plaintiff to proceed on an Eighth

Amendment deliberate indifference claims against Defendant Lawson for failing to provide plaintiff with medical care on November 30, 2020 (Count 1); an Eighth Amendment deliberate indifference claim against Defendant McVey for failing to provide Plaintiff with emergency medical care in June 2021 (Count 2); and an Eighth Amendment deliberate indifference claim against Defendant Moldenhauer for inadequate treatment of Plaintiff's ongoing post COVID symptoms (Count 3). (Doc. 11).

Pending before the Court is Defendant Moldenhauer's motion for summary judgment on the issue of exhaustion of administrative remedies filed on June 28, 2024. (Doc. 33, 34).[1] Defendant Moldenhauer argues that Plaintiff failed to timely and properly exhaust his administrative remedies prior to filing the present lawsuit because he did not file any grievances which addresses Plaintiff's claim against him pursuant to the procedures set forth in the Illinois Administrative Code. Along with the motion for summary judgment, Defendant filed the required Federal Rule of Civil Procedure 56 notice informing Plaintiff of the consequences of failing to respond to the motion for summary judgment. (Doc. 35). Plaintiff opposes the motion. (Doc. 38). As the motion is ripe, the Court turns to address the merits of the motion.

---

[1] To date, neither Defendant Lawson nor Defendant McVey filed a motion for summary judgment on the issue of failure to exhaust administrative remedies. The time to do so has passed. *See* (Doc. 32).

## FACTS[2]

On May 25, 2023, Plaintiff filed this lawsuit. (Doc. 2). Plaintiff states that on November 30, 2020, while housed at Menard Correctional Center, he contracted COVID-19. (Doc. 2, p. 8). As the day progressed, Plaintiff alleges his symptoms worsened and he became bedridden and experienced terrible pain. He informed Correctional Officer Lawson of his symptoms and asked for medical attention. Defendant Lawson, however, failed to obtain medical care for Plaintiff. *Id.* The next morning, Plaintiff informed Correctional Officer James of his symptoms, and James promptly took Plaintiff to receive medical treatment. *Id.* at p. 9. Plaintiff tested positive for COVID-19 and was placed under quarantine. *Id.*

Since contracting COVID-19, Plaintiff continues to suffer from ongoing symptoms such as chest pain, loss of feeling in his fingertips and toes, and shooting pain and numbness in his right arm. (Doc. 2, p. 10). On June 26, 2021, Plaintiff asked for emergency medical attention and was escorted to the health care unit. The medical technician determined that Plaintiff had a low heart rate, and he was scheduled to see a doctor. Later that day, Plaintiff began to experience more severe chest pains. He told Correctional Officer McVey about his symptoms and stated that he needed to see a medical technician. Defendant McVey ignored Plaintiff's request and left him in his cell to suffer. *Id.*

---

[2]    The parties agree that the relevant grievance is Plaintiff's emergency grievance dated July 3, 2021.

At some point, Plaintiff was seen by Nurse Practitioner Moldenhauer. Defendant Moldenhauer performed several tests, including blood tests, vital checks, and an EKG. (Doc. 2, p. 10). The cause of Plaintiff's symptoms was never determined, and he has not received any medical treatment or further evaluation. All medical evaluations have stopped, but Plaintiff continues to experience all the same symptoms with no relief. He believes that the symptoms stem from contracting COVID-19 while at the prison. *Id.* at p. 11.

On July 3, 2021, Plaintiff filed an emergency grievance # 14-7-21 concerning the allegations citing medical treatment. In toto the grievance reads:

> I have been having a serious medical issue, and have been experiencing alarming symptoms such as shooting pains and numbness in my right arm, loss of feeling in my finger tips, and in my feet, I have been experiencing chest pains and on 6-26-21 I had to ask for an emergency med-tech on first shift, and the Sgt. walked me to the HCU and I was seen by a nurse named Augusta and it was recorded that my heart rate was low and she said she was going to put me in to see the doctor. Later that day the chest pains returned and were even worse than before and I asked the second shift officer McVey for a med-tech, but he never got me one. I am still experiencing all the above stated symptoms, and have still not been seen by anybody. I believe these symptoms are possibly related to COVID-19, as I contracted COVID-19 in December, and think these could be long-term complication from contracting COVID-19.

(Doc. 34-2, p. 46, 47; Doc. 38, p. 6, 7.). Plaintiff requested the following relief: "I am requesting immediate medical attention to identify what these issues are and treat them." (Doc. 34-2 p. 46; Doc. 38 p. 6.). Plaintiff does not name Defendant Moldenhauer. On July 7, 2021, the Chief Administrative Officer ("CAO") expedited the emergency. *Id.* The grievance officer recommended that the grievance be moot: "Forwarded to the Health

Care Unit to review the grievance on 7/9/2021. On 8/24/2021 Angela Crain, HCUA, RN, BSN advised that per review of the individual in custody's medical records, he was seen by NP Moldenhauer on July 6, 2021, for the referral from NSC on 6/26/2021. The individual in custody's medical concerns were addressed by NP Moldenhauer on 7/6/2021. Additionally, the individual in custody was seen again on 8/5/2021 for a follow up to his medical concerns." (Doc. 34-2, p. 45; Doc. 38, p. 8). On August 30, 2021, the CAO concurred with the grievance officer's decision. *Id.* On September 13, 2021, DeAnna Kink of the Administrative Review Board ("ARB") denied the grievance finding: "HCUA stated that grievant was seen by NP Moldenhauer on 07/06/21 for the referral from NSC on 6/26/2021. Medical concerns were addressed on 07/06/21 and grievant was seen on 08/05/21. Treatment is at the discretion of the IDOC physician. Continue to request NSC for future medical concerns." (Doc. 34-2, p. 44). Rob Jeffreys, Director, concurred with this finding. (Doc. 34-2, p. 44; Doc. 38, p. 10).

## LEGAL STANDARDS

Summary Judgment is proper if the pleadings, discovery materials, disclosures and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). *See* 42 U.S.C. § 1997e(a). That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983

of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* (emphasis added). The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *See, e.g.*, *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (noting that "[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion must occur before the suit is filed. *See Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). Plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.*

Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). Consequently, if a prisoner fails to use a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809. The purpose of exhaustion is to give prison officials an opportunity to address the inmate's claims internally, prior to federal litigation. *See Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

Under *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey v. Conley*, 544 F.3d 739, 740-741 (7th Cir. 2008). Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Court set forth the following procedures:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id.* at 742.

As an inmate confined within the IDOC, Plaintiff was required to follow the regulations contained in the IDOC's Grievance Procedures for Offenders ("grievance procedures") to exhaust his claims. *See* 20 ILL. ADMIN. CODE § 504.800, *et seq*. The grievance procedures first require inmates to file their grievance with the counselor within 60 days of the discovery of an incident. *See* 20 ILL. ADMIN. CODE § 504.810(a). The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 ILL. ADMIN. CODE § 504.810(c). Grievances that are unable to be resolved through routine channels are then sent to the grievance officer. *See* 20 ILL. ADMIN. CODE §504.820(a). The Grievance Officer will review the grievance and provide a written response to the inmate. *See* 20 ILL. ADMIN. CODE § 504.830(a). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer within two months after receipt of the grievance, when reasonably feasible under the circumstances." 20 ILL. ADMIN. CODE § 504.830(e). "The Chief Administrative Officer shall review the findings and recommendation and advise the offender of his or her decision in writing. *Id.*

If the inmate is not satisfied with the Chief Administrative Officer's response, he or she can file an appeal with the Director through the ARB. The grievance procedures specifically state, "[i]f, after receiving the response of the Chief Administrative Officer, the offender still believes that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director. The appeal must be received by the Administrative Review Board within 30 days after the date of the decision." 20 ILL. ADMIN. CODE § 504.850(a). The inmate shall attach copies of the Grievance Officer's report and the Chief Administrative Officer's decision to his appeal. *Id.* "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." 20 ILL. ADMIN. CODE § 504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination

of the grievance within 6 months after receipt of the appealed grievance, when reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." 20 ILL. ADMIN. CODE § 504.850(e).

## DISCUSSION

Defendant Moldenhauer maintains that Plaintiff's grievance dated July 3, 2021, does not reference any action or inaction by him. Defendant Moldenhauer notes that the grievance officer's response does mention that Defendant Moldenhauer saw Plaintiff on July 6, 2021, three days after Plaintiff filed the grievance. Defendant Moldenhauer argues that Plaintiff could not have grieved an issue regarding medical treatment by Defendant Moldenhauer on July 3, 2021, as that medical treatment had not yet occurred, thus, Plaintiff failed to exhaust his administrative remedies against them. Plaintiff counters that at the time he wrote the grievance he had not been seen by anyone in medical despite Nurse Augusta referring him for treatment and that he did not know Defendant Moldenhauer's identity at that time, so he did not know who was responsible for the delay in treatment.

Exhaustion of administrative remedies is an affirmative defense in an action against prison officials, and the burden of proof is on the officials. Here, the undersigned finds Defendant Moldenhauer has not met his burden and that Plaintiff did exhaust his claim as to him. The grievance procedures require that an inmate name the individuals involved in the complaint, or, if their names are not known, an inmate, must at the very

least, "include as much descriptive information about the individual as possible." 20 ILL. ADMIN CODE § 504.810(a)(b). *See also Ambrose v. Godinez*, No. 11-3068, 510 Fed. Appx. 470, 472 (7th Cir. Feb. 22, 2013); *but see Jackson v. Shepherd*, No. 13-2651, 552 Fed. Appx. 591, 593 n.1 (7th Cir. Feb. 6, 2014). Further, the Seventh Circuit has held that an inmate is required to provide enough information to serve a grievance's function of giving "prison officials a fair opportunity to address [an inmate's] complaints." *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011). This fits within the purpose of the PLRA exhaustion requirement, which was designed to afford correctional officials a chance to address inmate complaints internally, prior to resorting to federal litigation. *See, e.g.*, *Kaba*, 458 F.3d at 684 (citing *Woodford v. Ngo*, 548 U.S. 81, 93 (2006)). Indeed, the Seventh Circuit has consistently reminded district courts that "all the PLRA requires" is that a grievance "alert the prison to the nature of the wrong for which redress is sought[.]" *Westefer v. Snyder*, 422 F.3d 570, 580 (7th Cir. 2005) (citing *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002)). An inmate is not required to provide personal notice of suit to an individual defendant through his grievance. *See Maddox*, 655 F.3d at 722 (citing *Jones v. Bock*, 549 U.S. 199, 219 (2007)).

Here, the undersigned finds that Plaintiff through the above grievance provided enough information to put the prison officials on notice of the nature of his claim against Defendant Moldenhauer. The grievance provides enough detail to inform the prison officials that Defendant Moldenhauer was possibly involved somehow in Plaintiff's ongoing medical care or lack thereof. For example, the gravamen of Plaintiff's grievance

is that he had not been seen by anyone after he had experienced chest pains on June 26, 2021. A week after not having been seen, Plaintiff filed his grievance. The grievance also notes that when Plaintiff was seen on June 26, 2021, the nurse was going to put in a request so he could be seen by someone else. Yet, Plaintiff was seen by no one, which prompted the filing of his grievance. Plaintiff was eventually seen by Defendant Moldenhauer on July 6, 2021, which was three days after Plaintiff filed his grievance. While Defendant Moldenhauer is not specifically named, Defendant Moldenhauer was the individual who saw Plaintiff as result of the nurse sick call referral on June 26, 2021. Thus, the possibility exists that Defendant Moldenhauer contributed to the delay in medical treatment in that he did not see Plaintiff in a timely manner after the nurse sick call referral. Plaintiff did not know the identity of the individual who was supposed to have seen him after the nurse sick call referral was made on June 26, 2021, thus he should not be expected to name and/or provide any details about this person in his grievance. The simple fact that Plaintiff mentions he was receiving no treatment is sufficient to satisfy the purpose of exhaustion, which is to put the jail on notice of problems within the facility to allow the jail the opportunity to address the problem before a lawsuit is filed. Moreover, Defendant Moldenhauer was mentioned in the grievance process by both the grievance officer and the ARB when they issued their findings, thus indicating his potential responsibility and involvement for the lack of treatment. Construing the evidence in the light most favorable to Plaintiff, the Court finds that Defendant has not

carried his burden regarding exhaustion, and that Plaintiff did exhaust his administrative remedies as to his claim against Defendant Moldenhauer.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant Moldenhauer's motion for summary judgment on the issue of exhaustion (Doc. 33).

**IT IS SO ORDERED.**

**DATED:   August 15, 2024.**

Digitally signed by Judge Sison
Date: 2024.08.15 14:38:40 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**