**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **MOHAMMED ABUHARBA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 3:23-cv-01761-GCS** |
| | ) | |
| **DANIEL LAWSON,** | ) | |
| **PATRICK MCVEY,** | ) | |
| **and** | ) | |
| **MICHAEL MOLDENHAUER,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

### INTRODUCTION AND BACKGROUND

Now before the Court are Defendant Micheal Moldenhauer's motion for summary judgment, (Doc. 70, 71, 82, 83), and Defendant Daniel Lawson's and Patrick McVey's motion for summary judgment. (Doc. 73, 74, 75, 76, 78, 86).[1] Plaintiff opposes the motions. (Doc. 81). Based on the reasons delineated below, the Court **GRANTS** the motions for summary judgment.

[1] Along with the motions for summary judgment, Defendants filed the required Federal Rule of Civil Procedure 56 notices informing Plaintiff of the consequences of failing to respond to the motions for summary judgment and what is required in responding to motions for summary judgment. (Doc. 72, 77).

Plaintiff Mohammed Abuharba, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), brings this action under 42 U.S.C. § 1983 for deprivations of his civil rights while he was housed at Menard Correctional Center ("Menard"). (Doc. 2). Plaintiff alleges Defendants were deliberately indifferent to his medical needs in violation of the Eighth Amendment. Specifically, Plaintiff alleges that on November 30, 2020, while housed at Menard, he contracted COVID-19. (Doc. 2, p. 8). As the day progressed, Plaintiff noted that his symptoms became worse, and he became bedridden and experienced terrible pain. He informed Defendant Lawson of his symptoms and asked for medical attention. Defendant Lawson, however, failed to obtain medical care for Plaintiff. *Id*. The next morning, Plaintiff informed Correctional Officer James of his symptoms, and James promptly took Plaintiff to receive medical treatment. (Doc. 2, p. 9). Plaintiff tested positive for COVID-19 and was placed under quarantine. *Id*.

Since contracting COVID-19, Plaintiff continues to suffer from ongoing symptoms such as chest pain, loss of feeling in his fingertips and toes, and shooting pain and numbness in his right arm. (Doc. 2, p. 10). On June 26, 2021, Plaintiff asked for emergency medical attention and was escorted to the health care unit. The medical technician determined Plaintiff had a low heart rate; he was scheduled to see a doctor. Later that day, Plaintiff experienced more severe chest pains. He told Defendant McVey about his symptoms and stated he needed to see a medical technician. Defendant McVey ignored Plaintiff's request and left him in his cell to suffer. *Id*.

At some point, Plaintiff was seen by Defendant Moldenhauer. Defendant Moldenhauer performed several tests, including blood tests, vital checks, and an EKG.

(Doc. 2, p. 10). The cause of Plaintiff's symptoms was never determined, and he has not received any medical treatment or further evaluation. All medical evaluations have stopped, but Plaintiff continues to experience the same symptoms with no relief. He believes that the symptoms stemmed from contracting COVID 19 while at the prison. *Id.* at p. 11.

On January 19, 2024, the Court allowed Plaintiff to proceed on the following claims:

> Count 1: Eighth Amendment deliberate indifference claim against Defendant Lawson for failing to provide Plaintiff with medical care on November 30, 2020.
>
> Count 2: Eighth Amendment deliberate indifference claim against Defendant McVey for failing to provide Plaintiff with emergency medical care in June 2021.
>
> Count 3: Eighth Amendment deliberate indifference claim against Defendant Moldenhauer for inadequate treatment of Plaintiff's ongoing post COVID-19 symptoms.

(Doc. 11).

Defendants maintain they are entitled to summary judgment as Plaintiff cannot set forth any evidence they were deliberately indifferent to Plaintiff's serious medical needs, nor did Plaintiff suffer any injury caused by them. Further, Defendants Lawson and McVey argue they are entitled to qualified immunity. Plaintiff counters that the evidence shows Defendants were deliberately indifferent to his serious medical needs. Plaintiff asserts that he suffered unnecessary and wanton infliction of pain and suffering due to Defendants' conduct and such pain and suffering could have been avoided had Defendants acted properly. For the reasons delineated below, the Court grants the motions for summary judgment.

## UNDISPUTED FACTS[2]

During the time relevant to the complaint, Plaintiff Abuharba was an inmate incarcerated within the IDOC at Menard. Defendant McVey was employed by IDOC as a Correctional Officer at Menard, Defendant Lawson was employed by IDOC as a Correctional Officer at Menard, and Defendant Moldenhauer was employed as a nurse practitioner at Menard.

Plaintiff has no medical or mental health training.

Defendant Lawson is not a medical professional. Defendant Lawson has never given Plaintiff treatment for his injuries. Defendant McVey is not a medical professional. Defendant McVey has never given Plaintiff treatment for his injuries.

Plaintiff was diagnosed with a low heart rate while being held in St. Clair County jail, prior to contracting Covid-19 in November of 2020.

The medical records show that Defendant Moldenhauer saw Plaintiff on March 6, 2020, for potential exposure to an inmate with influenza. Plaintiff reported that a different

2 In response to Defendants' motions for summary judgment, Plaintiff did not address/mention any of Defendants' assertions of material facts in violation of Local Rule 56(b)(1). This is despite the fact that Defendants provided Plaintiff with the required notices of the consequences of failing to respond. (Doc. 72, 77). Local Rule 56.(1)(g) additionally provides: "[a]ll material facts set forth in a Statement of Material Facts or a Statement of Additional Material Facts shall be deemed admitted for the purposes of summary judgment unless specifically disputed." SDIL-LR 56.1(g). Further, the Local Rule 56(j) states in part: "[t]his Local Rule applies equally to represented and *pro se* parties . . . ." Thus, the opposing party must respond to the movant's statement of facts. *See Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005). As Plaintiff did not respond/dispute Defendants' material facts, the Court deems them admitted for the purposes of these motions for summary judgment.

inmate near him had tested positive for the flu. Defendant Moldenhauer issued him a ten-day prescription of Tamiflu.

Thereafter, Defendant Moldenhauer saw Plaintiff on July 22, 2020, for complaints of neck pain. Plaintiff indicated that a tact team had him on the floor and he has had neck pain since then. Defendant Moldenhauer observed no signs or symptoms of difficulty with his neck range of motion during the exam. Defendant Moldenhauer diagnosed him with neck pain and referred him for x-rays of his cervical and thoracic spine. Defendant Moldenhauer also ordered him prescriptions of Robaxin and Naproxen.

Defendant Moldenhauer next saw Plaintiff on September 14, 2020, for neck pain. Plaintiff stated that a tact team had him bend his neck for several hours. He also reported he was not taking his medications. Defendant Moldenhauer diagnosed him with a neck strain and referred him for a physical therapy evaluation. Defendant Moldenhauer also ordered him a prescription of Naproxen and told him to follow-up in two months.

Plaintiff underwent x-rays of his cervical and thoracic spine on November 11, 2020, which found straightening of the cervical curvature but no fracture or subluxation.

Plaintiff claims that on November 30, 2020, he complained to Defendant Lawson about his symptoms and told him he was in pain and needed medical attention immediately. Plaintiff is aware that Menard has a written system for requesting medical care. Plaintiff admits that nurses were scheduled to come by his cell that day to distribute medications. Plaintiff also admits he only talked to Defendant Lawson about his symptoms on November 30, 2020. Plaintiff claims that Defendant Lawson was

deliberately indifferent to his medical condition by not taking him to seek immediate medical care in November.

Plaintiff admits he was seen by the Health Care Unite ("HCU") the next day where he tested positive for COVID-19.

Plaintiff filed a grievance against Defendant Lawson related to the events that occurred on November 30, 2020.

Plaintiff remained in the south cell house for Covid-19 quarantine for approximately two weeks. During his time in Covid-19 quarantine, Plaintiff was seen by the healthcare staff at least twice each day.

Plaintiff admits no doctor told him that the actions or inactions of Defendant Lawson worsened his symptoms.

Plaintiff claims that Defendant McVey was deliberately indifferent regarding events that occurred on June 26, 2021. On the morning of June 26, 2021, Plaintiff claims he asked for a med-tech because he was experiencing numbness in his fingertips and toes and shooting pain in his arm and chest. Plaintiff admits he was taken to the HCU on the morning of June 26, 2021, where he was evaluated by a nurse. Plaintiff admits that on June 26, 2021, he was scheduled to see a doctor. While he was at the HCU on June 26, 2021, the nurse checked his vital signs but was not given medication for any of his symptoms.

Plaintiff admits that when he returned from the HCU his symptoms had improved. Plaintiff claims his symptoms returned around 3:00 PM on June 26, 2021, and he tried to call for a med-tech again. Plaintiff claims he spoke with Defendant McVey and

explained his symptoms to him. Plaintiff claims Defendant McVey ignored his requests for medical care. Plaintiff admits that his pain decreased significantly the next day.

Plaintiff admits that he saw a doctor on July 6, 2021, in relation to the symptoms he experienced on June 26, 2021. Plaintiff also admits the doctor performed tests and gave him a diagnosis of anxiety. Plaintiff claims that non-medical correctional officer, Defendant McVey, failed to give him the medical attention needed for the symptoms he was experiencing. Plaintiff admits no doctor told him that the actions or inactions of Defendant McVey worsened his symptoms.

Defendant Moldenhauer next saw Plaintiff on July 6, 2021, for reports of dizziness and bradycardia.[3] Plaintiff stated that two weeks ago he had an episode of dizziness, arm numbness, and shooting pain in his right arm. He reported that all symptoms had resolved except for the occasional shooting pain in the right arm. His blood pressure was within normal limits at 122/70. Defendant Moldenhauer diagnosed him with anxiety and referred him for an electrocardiogram ("EKG") and chest x-ray. Defendant Moldenhauer also ordered him a prescription of Vistaril. He further ordered that Plaintiff's blood pressure be taken three times a week for two weeks and that he return for a follow-up in one week.

---

[3] Bradycardia is a medical condition characterized by a slow heart rate, typically defined as a resting heart rate below 60 beats per minute.

Plaintiff's blood pressure was checked on the following dates and yielded the following results: July 9, 2021 (128/68); July 12, 2021 (132/78); July 14, 2021 (110/70); July 16, 2021 (132/64); and July 23, 2021 (140/72).

Plaintiff did not show up to his scheduled appointment with a doctor on July 15, 2021. The appointment was rescheduled for the NP/MD call line for the next available provider.

Plaintiff underwent a chest x-ray on July 16, 2021, which found that the lungs were clear, no pneumothorax was present, no cardiomegaly, and no acute cardiopulmonary disease.

Plaintiff was scheduled for his EKG on July 22, 2021, but refused to appear for his appointment. Plaintiff underwent the EKG on September 12, 2021, which found moderate sinus bradycardia.

## LEGAL STANDARDS

### A. Summary Judgment Standard

Summary judgment is proper when the pleadings and affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. PROC. 56(c); *Gupta v. Melloh*, 19 F.4th 990, 997 (7th Cir. 2021) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986)). The movant bears the burden of establishing the absence of a genuine issue as to any material fact and entitlement to judgment as a matter of law. *See Quinn v. Wexford Health Sources, Inc.*, 8 F.4th 557, 567 (7th Cir. 2021) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The Court must consider the entire record, drawing reasonable inferences and resolving

factual disputes in favor of the non-movant. *See Fletcher v. Doig,* 145 F.4th 756, 764 (7th Cir. 2025) (citing *Anderson*, 477 U.S. at 255). *See also Bishop v. Air Line Pilots Association International,* 5 F.4th 684, 693 (7th Cir. 2021) (stating that "we are not required to draw every conceivable inference from the record . . . but 'only those inferences that are reasonable.'") (internal citations omitted). Summary judgment is also appropriate if a plaintiff cannot make a showing of an essential element of his claim. *See Celotex*, 477 U.S. at 322. While the Court may not "weigh evidence or engage in factfinding[,]" it must determine if a genuine issue remains for trial. *Lewis v. City of Chicago*, 496 F.3d 645, 651 (7th Cir. 2007).

In response to a motion for summary judgment, the non-movant may not simply rest on the allegations in his pleadings; rather, he must show through specific evidence that an issue of fact remains on matters for which he bears the burden of proof at trial. *See Knight v. Wiseman,* 590 F.3d 458, 463 (7th Cir. 2009); *Abrego v. Wilkie*, 907 F.3d 1004, 1012 (7th Cir. 2018). No issue remains for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party . . . if the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–250 (citations omitted). *Accord Smith v. City of Janesville,* 40 F.4th 816, 821 (7th Cir. 2022); *Doxtator v. O'Brien,* 39 F.4th 852, 860 (7th Cir. 2022). In other words, "inferences relying on mere speculation or conjecture will not suffice." *DiPerna v. Chicago School of Professional Psychology,* 893 F.3d 1001, 1006 (7th Cir. 2018) (internal citation omitted). *See also Anderson*, 477 U.S. at 252 (finding that "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there

must be evidence on which the jury could reasonably find for the [non-movant]”). Instead, the non-moving party must present “definite, competent evidence to rebut the [summary judgment] motion.” *Burton v. Kohn L. Firm, S.C.*, 934 F.3d 572, 579 (7th Cir. 2019) (internal citation omitted).

**B. Deliberate Indifference**

The Eighth Amendment prohibits cruel and unusual punishments, and the deliberate indifference to the “serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution.” *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 457-458 (7th Cir. 2020) (citations omitted). A prisoner is entitled to “reasonable measures to meet a substantial risk of serious harm”—not to demand specific care. *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). A prisoner’s dissatisfaction with a medical professional’s prescribed course of treatment does not give rise to a successful deliberate indifference claim unless the treatment is so “blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate the prisoner’s condition.” *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) (citation omitted).

To prevail on a claim of deliberate indifference, a prisoner who brings an Eighth Amendment challenge of constitutionally deficient medical care must satisfy a two-part test. *See Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021) (citations omitted). The first consideration is whether the prisoner has an “objectively serious medical condition.” *Johnson*, 5 F.4th at 824. *Accord Whitaker v. Dempsey*, 144 F.4th 908, 916 (7th Cir. 2025) (citations omitted). “A medical condition is objectively serious if a physician has diagnosed it as requiring treatment, or the need for treatment would be obvious to a

layperson." *Lockett v. Bonson*, 937 F.3d 1016, 1022-23 (7th Cir. 2019) (citations omitted). It is not necessary for such a medical condition to "be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). *Accord Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (violating the Eighth Amendment requires "deliberate indifference to a substantial risk of serious harm") (internal quotation marks omitted).

Prevailing on the subjective prong requires a prisoner to show that a prison official has subjective knowledge of—and then disregards—an excessive risk to inmate health. *See Johnson*, 5 F.4th at 824. The plaintiff need not show the individual "literally ignored" his complaint, but that the individual was aware of the condition and either knowingly or recklessly disregarded it. *Haywood v. Hathaway*, 842 F.3d 1026, 1031 (7th Cir. 2016) (citations omitted). "Something more than negligence or even malpractice is required" to prove deliberate indifference. *Lockett*, 937 F.3d at 1023. *See also Hammond v. Rector*, 123 F. Supp. 3d 1076, 1086 (S.D. Ill. 2015) (stating that "isolated occurrences of deficient medical treatment are generally insufficient to establish . . . deliberate indifference"). Deliberate indifference involves "intentional or reckless conduct, not mere negligence." *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010) (citing *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010).

Assessing the subjective prong is more difficult in cases alleging inadequate care as opposed to a lack of care. Without more, a "mistake in professional judgment cannot

be deliberate indifference." *Eagan v. Dempsey*, 987 F.3d 667, 688 (7th Cir. 2021) (citations omitted). The Seventh Circuit has explained:

> By definition a treatment decision that's based on professional judgment cannot evince deliberate indifference because professional judgment implies a choice of what the defendant believed to be the best course of treatment. A doctor who claims to have exercised professional judgment is effectively asserting that he lacked a sufficiently culpable mental state, and if no reasonable jury could discredit that claim, the doctor is entitled to summary judgment.

*Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016) (citing *Zaya v. Sood*, 836 F.3d 800, 805-806 (7th Cir. 2016)). This is in contrast to a case "where evidence exists that the defendant [ ] knew better than to make the medical decision[ ] that [he] did[.]" *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 964 (7th Cir. 2019) (citations omitted). A medical professional's choice of an easier, less efficacious treatment can rise to the level of violating the Eighth Amendment where the treatment is known to be ineffective but is chosen anyway. *See Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010).

Non-medical prison staff, meanwhile, are generally "entitled to relegate to the prison's medical staff the provision of good medical care[.]" *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). Thus, non-medical prison staff may be held liable under § 1983 only if they have "a reason to believe (or have actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner." *Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011). The relevant inquiry turns on the prison official's subjective state of mind. *See Petties v. Carter*, 836 F.3d 722, 729 (7th Cir. 2016) (en banc).

**DISCUSSION**

**A. Defendant Moldenhauer**

Defendant Moldenhauer argues he is entitled to summary judgment as Plaintiff cannot establish that he exhibited deliberate indifference to his serious medical needs. Specifically, Defendant Moldenhauer argues that Plaintiff received appropriate care during the July 6, 2021, visit and abundant care before and after the July 6, 2021, visit. Plaintiff contends Defendant Moldenhauer's response to his chest pain was woefully inadequate and amounted to willful ignorance. Plaintiff further claims Defendant Moldenhauer persisted with an ineffective treatment plan. The Court agrees with Defendant Moldenhauer.

For the purposes of this motion, the Court finds Plaintiff's contraction of COVID-19 is a serious medical condition. However, based on that same record and construing the evidence in the light most favorable to Plaintiff, the Court finds there is no evidence in the record to show that Defendant Moldenhauer was deliberately indifferent to Plaintiff's serious medical needs.

Here, the record reveals Defendant Moldenhauer provided appropriate medical treatment to Plaintiff. Defendant Moldenhauer saw Plaintiff three times prior to him contracting COVID-19 and only *one* time after he contracted COVID-19 on July 6, 2021. During that visit, Defendant Moldenhauer examined Plaintiff for dizziness, arm numbness, and shooting pain in his right arm. All of these symptoms, except for the shooting pain in his right arm, resolved itself. During this visit, Plaintiff's blood pressure was 120/77. Defendant Moldenhauer diagnosed Plaintiff with anxiety and ordered an

EKG and a chest x-ray. Defendant Moldenhauer also prescribed anxiety medication, ordered regular monitoring of his blood pressure, and required a follow-up in one week.[4] Defendant Moldenhauer did not treat Plaintiff again.

There is nothing to suggest the treatment Plaintiff received from Defendant Moldenhauer was "so blatantly inappropriate as to evidence intentional mistreatment." *Greeno v. Daly*, 414 F.3d 645, 654 (7th Cir. 2005) (citation omitted). Moreover, Plaintiff has offered no evidence to support his assertions that Defendant Moldenhauer's care was lacking or that Defendant Moldenhauer's conduct caused him substantial harm. Therefore, Plaintiff's assertions are insufficient to permit a reasonable jury to find deliberate indifference. *See, e.g.*, *Snipes*, 95 F.3d at 592. (stating that "[a] prisoner's dissatisfaction with a doctor's prescribed course of treatment does not give rise to a constitutional claim."). Even construing the evidence in the light most favorable to Plaintiff, the Court finds no reasonable jury could conclude that Defendant Moldenhauer was deliberately indifferent to Plaintiff's serious medical needs. Thus, the Court finds that Defendant Moldenhauer is entitled to summary judgment.

**B. Defendants Lawson and McVey**

As stated *supra*, for the purposes of this motion and based on the record before the Court, the Court finds Plaintiff's contraction of COVID-19 constitutes an objectively serious medical need. However, based on that same record and construing the evidence

---

[4] Plaintiff did not show up for the seven-day follow-up and refused to have the EKG ordered by Defendant Moldenhauer. Plaintiff did undergo blood pressure checks and eventually did undergo the EKG.

in the light most favorable to Plaintiff, the Court finds there is no evidence in the record to show that either Defendant Lawson or Defendant McVey were deliberately indifferent to Plaintiff's serious medical need.

Defendants argue they are entitled to summary judgment as Plaintiff cannot show their conduct rose to the level of a constitutional violation for deliberate indifference. Plaintiff asserts that, on the nights in question, he informed both Defendant Lawson and Defendant McVey that he was sick and needed medical care, that he did not see either Defendant again on those nights, and that neither Defendant sought medical attention for him. Further, Plaintiff argues these delays caused him to suffer through the night until he received treatment the next day or when his symptoms subsided the next day.

Plaintiff has not shown that the one-night delay in treatment he attributes to Defendant Lawson (November 30, 2020) or to Defendant McVey (June 26, 2021) caused him any harm. *See, e.g.*, *Jackson v. Pollion*, 733 F.3d 786, 790 (7th Cir. 2013) (stating that [n]o matter how serious a medical condition is, the sufferer cannot prove tortious misconduct (including misconduct constituting a constitutional tort) as a result of failure to treat the condition without providing evidence that the failure caused injury or a serious risk of injury."). Where a delay in treatment is at issue, "a plaintiff must offer medical evidence that tends to confirm or corroborate a claim that the delay was detrimental." *Williams v. Liefer*, 491 F.3d at 710, 715 (7th Cir. 2007). Non-expert testimony "is sufficient as long as it permits the fact-finder to determine whether the delay caused additional harm." *Jackson v. Sheriff of Winnebago City, Ill.*, 74 F.4th 496, 501 (7th Cir. 2023). Unless a plaintiff can

proffer no evidence that the delay exacerbated an injury, summary judgment is not proper. *Id*.

Here, Plaintiff admits Defendants did not cause his situation to worsen, that neither Defendants are medical professionals, and that he is aware that neither are responsible for providing medical care to prisoners. As to the night of November 30, 2020, Plaintiff requested medical treatment from Defendant Lawson on the 3-11 shift because he was experiencing COVID-19 symptoms. Plaintiff did not suffer additional harm because of the delay in treatment; rather, he was seen and treated for his condition the very next day. Similarly, as to the evening of June 26, 2021, Plaintiff requested medical treatment from Defendant McVey on the 3-11 shift because he was experiencing numbness and shooting pain in his shoulder and chest. Plaintiff testified that his symptoms subsided the next morning. Even construing the evidence in the light most favorable to Plaintiff, the Court finds that Plaintiff has not presented evidence from which a reasonable jury could conclude that Defendants were deliberately indifferent to his serious medical needs or turned a blind eye towards Plaintiff's emergency medical situation. Thus, Defendants Lawson and McVey are entitled to summary judgment.[5]

## CONCLUSION

Accordingly, the Court **GRANTS** the motions for summary judgment (Doc. 70, 73). The Court **FINDS** in favor of Defendant Daniel Lawson and against Plaintiff Mohammed Abuharba on Count 1, in favor of Defendant Patrick McVey and against

5 As Defendants Lawson and McVey are entitled to summary judgment, the Court need not address the issue of qualified immunity.

Plaintiff Mohammed Abuharba on Count 2, and in favor of Michael Moldenhauer and against Plaintiff Mohammed Abuharba on Count 3. Further, the Court **DIRECTS** the Clerk of the Court to enter judgment reflecting the same and close the case.

**IT IS SO ORDERED**.

**DATED: August 27, 2026.**

Digitally signed by Judge Sison
Date: 2026.08.27 15:10:39 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**